24

Lena Reid, *pro se.*

(400 SE2d 384)

DEEN, Presiding Judge.

Billy Randall Ware was found guilty by a jury of criminal attempt to commit burglary. He appeals from the judgment entered on the conviction, claiming the evidence was insufficient to support the verdict, and that statements he made to the police should have been excluded from evidence at the trial.

At about 6:45 a.m. police were alerted that a burglar alarm was sounding at the Hackney residence. Mr. and Mrs. Hackney had already left for work at 6:15 a.m., leaving their house secure and quiet. When police officers arrived at about 7:15 a.m., they discovered no one at the house, the alarm still sounding, a window open with the screen removed, and what appeared to be a partial bootprint outside the open window. The telephone line to the house had been cut. Later, when officers dusted for fingerprints, they found only "two clear smudges" on the edge of the window screen.

As one of the officers arrived and got out of his car, a neighbor shouted from a nearby house, "There's a man walking down the road," and pointed toward an adjacent road. The officer drove over to the road, saw Ware walking about a quarter of a mile from the Hackney residence, and stopped him. The officer asked him for his name and some identification. Ware gave a false name and produced a driver's license, which later proved to have been reported stolen nine months earlier. When asked what he was doing in the area, Ware replied that he had walked from his sister's house to go job hunting. The officer questioned Ware about a large bulge in his shirt. Appellant removed his socks from inside his shirt, explaining that he had taken them off because they hurt his feet. Ware was wearing laced-up, combat-style boots. At that point the officer placed Ware under arrest. As he was putting him into the patrol car, the officer noticed that Ware was carrying a fold-up knife in a case. He removed the knife and found a piece of wire hanging on the blade.

Ware was transported back to the Hackney residence, where he was placed in another officer's car and read the *Miranda* warnings. Later that day at the police station, Ware signed a form acknowledging his *Miranda* rights and waiving them to make a statement. He told police that he was living with his sister and brother-in-law, Bill Lofty. Lofty later claimed that Ware had moved out a few days earlier. He then gave conflicting versions as to how he had gotten to the area where the burglary was attempted, first stating that he walked

there and later that Lofty had driven him there. That same day Lofty was also arrested and charged with the same offense, apparently on the sole basis that his automobile had been spotted that morning on a road near the Hackney residence shortly after the attempted burglary, and at another time about a week earlier. Lofty and Ware were tried together. Ware did not testify. After his motion for a directed verdict of acquittal was denied, Lofty was found not guilty by the jury. *Held*:

1. Ware contends the trial court erred by denying his motions for a directed verdict of acquittal and for a new trial because the evidence was insufficient to support the verdict. The evidence against Ware was entirely circumstantial. His conviction was based on evidence that he was found walking about a quarter of a mile from the Hackney residence within about a half hour of the attempted burglary. He lied about his identity and produced a driver's license reported stolen nine months earlier. He never explained to the police why he had identified himself as someone whose driver's license he produced, which he said he found in a parking lot the night before and which turned out to be stolen. He never explained to the police why he gave three different stories about the morning's events. He never said where it was he was looking for a job. Although a carpet business was in the vicinity, this was an area of houses and woods and it was about 7:00 a.m. when Ware was stopped.

Particularly in light of patent lies, the jury could have disbelieved all of what Ware told the police, including that his socks were in his pocket because his feet were more comfortable in his combat boots without them, and concluded that his real activity shortly before he was apprehended was attempting to enter the Hackneys' house. He had a knife with a piece of wire on it, and the telephone wire had been cut. He was wearing boots, and what appeared to be a bootprint was on the plastic sheet covering bags of stacked material below the partially opened window. He had socks tucked in his shirt, and smudge marks rather than fingerprints or glove marks were found on the window screen, "two clear smudges, like whoever had taken the screen off had something on their hands." The officer testified that he had learned from experience that burglars often wear socks on their hands to prevent fingerprints.

These, and the other circumstances developed before the jury, such as that Ware had apparently been drinking and that the Hackneys' neighbor directed the police to Ware walking down the road when the police came in response to a ringing burglar alarm, were sufficient to "exclude every other reasonable hypothesis save that of the guilt" of Ware of criminal attempt to commit burglary. OCGA §§ 24-4-6; 16-4-1; 16-7-1. The only other reasonable hypothesis, that Ware had stayed overnight with his sister and brother-in-law

and had left to look for a job, collapsed in the mire of his inconsistent statements and the otherwise uncontradicted evidence that he had not spent the night there.

We conclude the evidence was sufficient to sustain the conviction. The relevant inquiry here is not only whether the evidence is sufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt under *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Certainly no conviction can stand under the Federal Constitution if it fails to satisfy the standard of review set out in *Jackson*. However, in cases based solely on circumstantial evidence, the State of Georgia requires that "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-4-6. The Georgia standard provides additional protection to those accused of crimes solely on circumstantial evidence, and thus provides the relevant standard of review. See *Creamer v. State*, 229 Ga. 511, 515 (192 SE2d 350) (1972) (Georgia may elect to give its citizens more protection, but not less, than the United States).

In applying the relevant standard, "[t]o sustain the judgment of conviction, the evidence need not exclude every inference or hypothesis except guilt of the accused, but only reasonable inferences or hypotheses, so as to justify the inference, beyond reasonable doubt, of guilt. *Rogers v. State*, 139 Ga. App. 656, 659 (229 SE2d 132). Questions as to reasonableness generally are to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, the appellate court will not disturb that finding, unless the verdict of guilt is unsupportable as a matter of law. [Cits.]" *Pratt v. State*, 180 Ga. App. 389, 390 (348 SE2d 922) (1986). "If [the evidence is] separated, and divided into segments, no one segment would be sufficient to convict. But when added together, as a whole it is sufficient to warrant a conviction, and it excludes every other reasonable hypothesis save that of guilt of the accused. [Cits.]" *Huncke v. State*, 137 Ga. App. 299, 301 (4) (223 SE2d 492) (1976).

The trial court correctly denied the motions for a directed verdict of acquittal and for a new trial and confirmed the verdict of the jury.

2. In his second enumeration of error, appellant contends the trial court erred by failing to exclude statements he made to police, which he claims were not voluntary and given in violation of the requirements of *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). The trial court held a pre-trial hearing pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964). The evidence showed that the initial police questioning and responses

given by Ware prior to his arrest were within the limited scope of a justifiable stop and threshold investigation into whether the appellant should be detained as a suspect in the attempted burglary. They were not part of a custodial interrogation within the ambit of *Miranda. Williamson v. State,* 171 Ga. App. 904 (321 SE2d 762) (1984); *Webb v. State,* 179 Ga. App. 101 (345 SE2d 648) (1986). The statements by Ware after his arrest were made after the *Miranda* warnings had been given and appellant had signed a waiver and agreed to make a statement. Based on the evidence, the trial court was authorized to find that the statements were voluntary and that the requirements of *Miranda* were satisfied. *Kincey v. State,* 191 Ga. App. 300, 301-302 (381 SE2d 439) (1989).

*Judgment affirmed. Pope and Beasley, JJ., concur.*

DECIDED DECEMBER 5, 1990.

*Bates, Kelehear & Starr, Harlan M. Starr,* for appellant.
*Jack O. Partain III, District Attorney, Kermit N. McManus, Assistant District Attorney,* for appellee.